UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JUSTIN P. STEELE,

        Plaintiff,

v.                                                Case No. 12-C-923

J ZWIERS, et al.,

        Defendants.

**DECISION AND ORDER**

Plaintiff brought this action under 42 U.S.C. § 1983 alleging that various prison staff were deliberately indifferent to his allergy to tomatoes. Plaintiff alleges that on June 25, 2012, he inadvertently consumed some tomato sauce, which produced an allergic reaction requiring hospitalization. He asserts that the cause of his injury was the staff's refusal to place him on a tomato-restricted diet. He alleges that they refused to do so despite knowing that he had an allergy to tomatoes that had been well-controlled at other institutions with a restricted diet.

When Steele arrived at Green Bay Correctional Institution in April 2012, an intake nurse noted that Steele reported a tomato allergy. The nurse also noted a negative RAST (radioallergosorbent) test from 2007 indicating that Steele was *not* allergic to tomatoes.[1] Plaintiff had scored a "0" on that test, indicating that no antibodies were present. This result was well below even the "equivocal" or "low equivocal" results that were possible results on the test. (ECF No. 50-

---

[1] Other medical notations indicate a 2010 RAST IgE test (Immunoglobulin E) that was also negative for tomatoes. (ECF No. 50-1 at 4, 8.)

1 at 24-25.)² That same month, Plaintiff saw Defendant Dr. Heidorn, who also noted the negative test in the record. Heidorn did not place Plaintiff on a tomato-free diet, but he ordered an allergy consult and a second RAST test. Plaintiff refused to have the lab testing done, however, for reasons that are not clear from the record. On June 25, he alleges that he mistakenly ingested some tomato sauce, which produced an allergic reaction. A visit to the nurse resulted in treatment with an EpiPen and albuterol, and the nurse called for an ambulance to take him to the emergency room.

At his next visit with Dr. Heidorn, Heidorn ordered the tomato-free diet that Steele had wanted all along. Not fully satisfied with his medical care, however, Steele then began asking for a "food challenge" to be administered. As the name suggests, a food challenge is a means of introducing suspected allergens into a diet to see how the patient reacts. Although simple in concept, the fact that a patient could experience a severe reaction (including anaphylaxis) means that such a test generally occurs in a hospital. The prison thus did not perform such testing, and the defendants note that such testing is not standard practice among allergists elsewhere, either. Throughout January, February and March 2013, Steele continued to refuse lab testing for tomato allergies, again for reasons that are unknown.

Plaintiff's central theory is that Dr. Heidorn and others were deliberately indifferent to his tomato allergy because they refused to administer a tomato-free diet despite knowing about the allergy and despite knowing that he had been on a tomato-free diet at other institutions. At its core, however, the plaintiff's dispute amounts to a disagreement about proper medical treatment. Both

---

² According to the University of Michigan Food Allergy Center, although RAST tests often show false positive results, a *negative* RAST result is strongly predictive of the absence of a food allergy. (http://medicine.umich.edu/dept/foodallergy/clinical-services/testing-diagnosis, last visited February 15, 2014.)

2

Dr. Heidorn and the intake nurse had told Plaintiff that the medical evidence suggested that he did *not* have a tomato allergy, and thus the real claim is not that they were "indifferent" to his condition but that they *questioned* whether he had such a condition at all. To be liable for deliberate indifference, a defendant must actually know and appreciate a risk to the inmate's health and well-being; it is not enough to suggest that the defendant *should* have known. "[T]he inquiry is not whether individual officers *should have known* about risks to [inmate] safety, but rather whether they *did* know of such risks." *Grieveson v. Anderson,* 538 F.3d 763, 775 (7th Cir. 2008). In essence, the plaintiff is asking that the defendants' conduct be assessed as though the RAST test in his file were *positive* rather than negative. If that were true, then he would have a case. But given that the only medical evidence in the record was negative for a tomato allergy, it was certainly reasonable for the defendants to have relied on that, particularly since Plaintiff had refused further testing. Plaintiff's arguments to the contrary amount to little more than second-guessing the conduct of trained medical staff.

That Plaintiff's own subjective view of his health situation need not be taken at face value is demonstrated by the record itself. As the defendants note, even now it is still unclear whether the plaintiff actually has a demonstrable allergy to tomatoes. Plaintiff's evidence is based on his own experience and the fact that previous institutions had complied with his desire to have a tomato-free diet. But the negative RAST test suggests otherwise, and Plaintiff has not put forth any evidence suggesting that such a test is not a strong indicator (particularly on the negative side) of allergies. In addition, a similar incident in February 2013 confounds matters further. Plaintiff was taken to the ER in February 2013 after complaining of having a tight throat and possible airway obstruction, which he associated with accidental tomato consumption. At 10:30 in the morning he had eaten a

meal containing beans, and at some point later he began experiencing symptoms of an allergic reaction. The throat soreness did not begin until several hours later, however. He asked a guard if there were tomatoes in the beans, and the guard said no. (ECF No. 50-1 at 28.)

After receiving several medications, both at the prison and the hospital, his examination at the hospital was "entirely normal" except for his "raspy voice," which the doctor concluded "could be volitional." (ECF No. 50-1 at 31.) (Apparently Plaintiff had expressed anger that the prison doctor had accused him of faking his condition, so the ER physician kept his opinion to himself.) Even so, the ER doctor described Plaintiff's sore throat as "purported" and stated that there "was no identifiable inflammation whatsoever."[3] (*Id.*)

Another examining physician found the link to a tomato allergy questionable. Dr. Bottei noted that "whether the patient was actually exposed to tomatoes yesterday . . . was unclear." (ECF No. 50-1 at 37.) He also found that the link to an allergy—*any* allergy—was not crystal clear. On the one hand, Plaintiff had swollen tonsils and at one point had experienced a neck rash, which pointed to an allergic reaction and angioedema (swelling). Yet since other parts of his body were not swollen, "this would speak against angioedema and an allergic reaction," as would the fact that Steele had not eaten anything immediately before his symptoms began. (*Id.* at 39.) Ultimately, Dr. Bottei concluded that a consult with an allergist might be appropriate: "we also have to try to figure out what might have caused this gentlemen to have an allergic reaction . . ." (*Id.* at 40.)

---

[3] There are other suggestions in the record that the plaintiff was manufacturing, or at least exaggerating, his symptoms. A nurse noted an instance of hearing him speaking in a normal voice to other inmates while waiting in the medication line but then using his typical "whisper" to talk to her. He then changed back to his normal voice. (ECF No. 50-1 at 13.)
     The defendants also note that on occasion Plaintiff purchased food that contained tomatoes, including barbecue sauce.

4

The thrust of Dr. Bottei's lengthy treatment notes was that it was still unclear, even in February 2013, what was causing Plaintiff to experience the symptoms and whether they were even due to a food allergy. The symptoms of the 2013 incident are described as being similar to the June 25, 2012 incident at issue here, and yet the link with tomatoes—or any other food—is completely lacking, apart from Plaintiff's subjective belief that there must have been some tomatoes in the beans he ate for lunch several hours before going to the hospital. What this shows is that Plaintiff's own subjective belief that his tomato allergy is obvious is simply not true. The fact that his condition was still unclear even in February 2013 undermines the suggestion that prison staff in June 2012 ignored an obvious risk to his health.

Finally, the actions the prison staff *did* take belie any notion that they were disregarding a risk to Plaintiff's health. When Steele experienced symptoms, he received numerous medications, including EpiPens and inhalers, and he was swiftly sent to the ER when he experienced breathing problems. Dr. Heidorn and others repeatedly ordered allergy tests, all of which Plaintiff declined because he wanted a food challenge test instead. The essence of Plaintiff's claim reduces to a basic disagreement with medical providers about how best to manage and diagnose his condition, and thus at best he would have a claim for negligence. But because his allergy was not as clear as he believes it was, he cannot show that any of the defendants disregarded a known risk to his health.

In sum, it is likely that previous institutions took Plaintiff's word for the fact that he had a tomato allergy and simply decided to restrict his diet accordingly. That was a sound decision. And in Plaintiff's mind it is probably an obvious one. But that does not mean it was the *only* reasonable approach. Placing inmates on restricted diets imposes an administrative cost and burden, and it opens the door to manipulation by inmates who would claim that various allergies require certain

5

foods. Accordingly, prisons do not lightly accede to the dietary wishes of every inmate without underlying medical evidence. Here, not only was there no medical evidence supporting a tomato restriction, there was *contrary* medical evidence in the form of at least one negative allergy test. In the face of a negative test and an inmate who inexplicably refused further testing (except for the kind he preferred), as well as the fact that Plaintiff experienced similar symptoms even without any demonstrable link to tomatoes, it is impossible to say that any Defendant was deliberately indifferent to a risk for serious injury. For this reason, the defendants' motion for summary judgment will be **GRANTED**. The motion to extend [77] is **GRANTED**. The other pending motions are **DENIED**[4].

**SO ORDERED** this __18th__ day of February, 2014.

                                          s/ William C. Griesbach
                                          William C. Griesbach, Chief Judge
                                          United States District Court

---

[4]The motion to amend [67] seeks to add an additional defendant, but amendment would not change the result here. The motion to extend the dispositive motion deadline [69] relates to a document that does not bear on the analysis here. The motion opposing summary judgment [73] is not a motion but merely a response. The motion for a preliminary injunction [81] lacks any relationship with this action.